FILED
2016 Mar-24 PM 01:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **MARLO LADEARA MCCOY,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Civil Action No.: 2:15-CV-00076-RDP |
| } | |
| **CAROLYN W. COLVIN,** } | |
| **Acting Commissioner of Social Security** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OF DECISION

Plaintiff, Marlo Ladeara McCoy, brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim for disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). *See also*, 42 U.S.C. §§ 405(g), 1383(c). After reviewing the record and the parties' briefs, the court finds that the Commissioner's decision is due to be affirmed.

**I.      Proceedings Below**

On September 23, 2011, Plaintiff filed applications for disability, DIB, and SSI, alleging disability beginning on December 31, 2007. (*See* Tr. 110-120). The Social Security Administration initially denied Plaintiff's applications. (Tr. 67-72). Plaintiff timely requested and received a hearing before the Honorable Lisa Johnson, United States Administrative Law Judge ("ALJ") on February 15, 2013. (Tr. 36-60). However, the ALJ concluded that Plaintiff was not disabled under the Act from December 31, 2007 through May 28, 2013. (Tr. 20-35).

Plaintiff then requested that the Appeals Council review the ALJ's unfavorable decision. (Tr. 19). Plaintiff submitted additional evidence to be considered by the Appeals Council, which

included a representative brief and medical records dated January 14, 2014. (*See* Tr. 1-2, 201-04). Upon consideration, the Appeals Council found that neither Plaintiff's arguments nor her additional evidence provided a basis for changing the ALJ's decision. (Tr. 2). On November 19, 2011, the Appeals Council denied Plaintiff's request, finding that the ALJ applied the proper legal standards, and that her decision was supported by substantial evidence. (Tr. 1-6). This denial rendered the ALJ's decision the final decision of the Commissioner, and therefore, a proper subject of this court's appellate review. *See* 20 C.F.R. §§ 404.981, 422.210(a).

**II.     Facts**

At the time of Plaintiff's hearing, Plaintiff was forty-one-years-old and had an eleventh grade education. (Tr. 151, 156). Plaintiff has previously worked as a caregiver, deli worker, dietary worker, warehouse worker, personal care attendant, and packing line worker. (Tr. 55-57, 163-78, 198).

In her applications, Plaintiff alleged disability due to her inability to stand for a long period of time, nerves, thyroid, headaches, lupus, muscle spasm, chronic pain in her hip joint, and depression. (Tr. 155). During her hearing, Plaintiff testified her ability to work was impaired by the following: bouts of nervousness and depression; Lupus-induced, total-body pain; recurring headaches; and carpal-tunnel syndrome in her left wrist. (Tr. 41-44, 47, 51).

Plaintiff testified that she has struggled with depression for a long period of time. (Tr. 46). Plaintiff added that due to her depression, she does not have the desire to do anything and spends her days at home hoping someone will come to her aid. (Tr. 42). Plaintiff testified that Mr. Dale, a physician's assistant at Jefferson Clinic, treated her for depression and had done so for years. (Tr. 43). At the time of her hearing, Plaintiff reported taking medication for her depression; however, she complained that this medication was ineffective in addressing her

depression-related symptoms. (Tr. 44-45). Plaintiff testified that she forgot to report her medication's ineffectiveness to Mr. Dale at her last check-up. (Tr. 46).

Plaintiff further testified that she suffers from headaches and total-body pain from her Lupus. Plaintiff indicated that her headaches occur weekly and last at least five days without wavering. (Tr. 50). Plaintiff reported that she had been prescribed headache medication for several years, but complained that this medication upset her stomach, and was ineffective at relieving her pain. (Tr. 49-50). Further, Plaintiff testified that her Lupus causes her moderate to moderately-severe, and at times even unbearable pain. (Tr. 48-49). Plaintiff reported that walking exacerbates the pain in her back and hips, and therefore she spends the majority of the day in bed. (Tr. 27, 48-49). At her hearing Plaintiff presented with a brace, and testified that she had trouble holding things due to sharp pains in her hands and carpal tunnel in her left wrist. (Tr. 51-52).

Regarding her daily activities and physical abilities, Plaintiff testified that the heaviest thing she was able to pick-up was a bottle of water. (Tr. 52). She estimated that she was able to walk ten to fifteen minutes at a time, but only with the assistance of her cane. (*Id*.). Plaintiff also testified that she was able to sit for ten to twenty minutes before needing to adjust or stand-up to alleviate her pain. (Tr. 53). Plaintiff reported that she was not able to drive or shop for groceries, and depended on her daughter's help to do so. (Tr. 53-54). Plaintiff also indicated that, because she had trouble reading and writing, she needs her daughter's help when writing and filling out forms. (Tr. 54). Plaintiff's school records confirm her recollection that she was placed in special education classes during high school and indicate her enrollment during ninth and tenth grade. (Tr. 181-86). Records also show that by the eleventh grade Plaintiff was no longer assigned to special education classes, and maintained at least a "C" average in most of her classes. (Tr. 181).

In November 2012, Plaintiff submitted to a consultative examination conducted by Dr. Romeo. (Tr. 301-15). Dr. Romero noted that her daughter reported that Plaintiff barely talked, was sometimes unresponsive, and raises her voice intermittently. (Tr. 303-06). Upon examination, Dr. Romero wrote that Plaintiff presented as well groomed, alert, and with no apparent signs of stress. (Tr. 303). Dr. Romero also noted that during her examination, Plaintiff was repeatedly unresponsive to all questions and requests, and reported she was no longer taking her medications as prescribed. (Tr. 303-05). Plaintiff's physical examination was normal. (Tr. 303-06). Dr. Romero's report summarizes Plaintiff's examination as incomplete due to an unresponsive patient who did not suffer from an apparent objective functional impairment. (Tr. 305). Dr. Romero also indicated that he suspected a psychiatric disorder such as hysterical conversion disorder, but made no diagnosis. (Tr. 305).

### III.     The ALJ's Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether a claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Work activity involving significant physical or mental activities is "substantial," while "gainful" work is done for pay or profit. *See* 20 C.F.R. § 404.1572(a)-(b). A claimant is presumed to have the ability to engage in a substantial gainful activity when her earnings from employment rise above the amount allowed under 20 C.F.R. §§ 416.974, 416.975. Engaging in substantial gainful activity precludes a claim of disability. 20 C.F.R. § 404.1520(b). The ALJ must then determine whether a claimant has a medically determinable impairment, or combination thereof, that significantly limits her ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, she may not claim disability. *Id.* Next, the ALJ must determine whether a claimant's impairment meets or medically equals the criteria of

an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App'x 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. A claimant is disabled if her impairment satisfies this listed criteria. 20 C.F.R. § 404.1520(a)(4)(iii).

If a claimant does not meet the listed criteria, the ALJ may still find disability, after a residual functional capacity ("RFC") assessment.[1] 20 C.F.R. § 404.1520(e). The ALJ uses the RFC assessment to determine whether a claimant is able to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If a claimant is able to perform past relevant work, she is not disabled; however, a finding that a claimant cannot perform past relevant work, requires the ALJ to determine if she is able to perform any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iv)-(v), 404.1520(g). Here, the burden shifts to the ALJ to prove that, given a claimant's RFC, age, education, and work experience, she is capable of making a successful adjustment to other jobs, available in substantial numbers within the national economy. 20 C.F.R. §§ 404.1520(g) and 404.1560(c).

Here, upon considering the record in its entirety, the ALJ found that Plaintiff met the insured status requirements of the Act through March 31, 2012, and that she has not engaged in substantial gainful activity since her alleged onset date, December 31, 2007. (Tr. 25). *See* 20 C.F.R. § 404.1571 *et seq.* Further, the ALJ found that Plaintiff suffered from a combination of severe impairments, including the following: syst lupus erythematosus (SLE); gastroesophageal disease (GERD); obesity; depression; and migraine headaches. (Tr. 25). *See* 20 C.F.R. §§ 404.1520(c) and 416.920(c)). Nevertheless, the ALJ determined that Plaintiff's impairments, individually and in combination, neither met nor medically equaled the severity of the listed

---

[1] A claimant's RFC indicates the most a claimant can do despite her physical and mental limitations. *See* 20 C.F.R. § 404.1545(a); Social Security Ruling (SSR) 96-8p, 196 WL 374184. The assessment of a claimant's RFC is based on an evaluation of all the relevant evidence, including medical evidence and testimony concerning the claimant's abilities and limitations. *See* 20 C.F.R. § 4041545(a); SSR 96-8p.

impairments found in the regulations. (Tr. 26). *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1; s*ee e.g.* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926.

In light of the objective medical evidence of record, the ALJ stated that "[Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. 28). The ALJ further found that Plaintiff had the RFC to perform a range of light work with specified limitations.[2] (Tr. 27). The limitations placed on Plaintiff include the following: she can lift and carry ten pounds frequently and twenty pounds occasionally; can sit, stand, and walk for six hours of an eight-hour workday; can balance, stoop, kneel, crouch, and crawl; can frequently finger and handle; can occasionally climb ramps and stairs; cannot climb ladders, ropes, or scaffolds; and cannot be exposed to workplace hazards such as dangerous machinery and unprotected heights. (Tr. 27). Regarding Plaintiff's mental RFC, the ALJ concluded that Plaintiff is able to perform simple, routine, repetitive tasks and can maintain concentration and attention for two hours at a time. (Tr. 27).

After comparing Plaintiff's RFC with the physical and mental demands of her past relevant work, the ALJ determined that Plaintiff was capable of performing her previous jobs as they are actually and generally performed. (Tr. 31). As a result, the ALJ found Plaintiff capable of performing her past work as a deli worker, a dietary worker, and a sitter at the light exertional level, and capable of performing her past work as a packing line worker at either the light or sedentary exertional level. (Tr. 31). Accordingly, the ALJ concluded that from December 31,

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [an individual] must have the ability to do substantially all of these activities. If someone can do light work, … he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

2007 through May 28, 2013 Plaintiff was not disabled under the Act, and was not entitled to disability benefits. (Tr. 30).

## IV. Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988), *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982). The Commissioner's findings are conclusive if supported by "substantial evidence." 42 U.S.C. § 405(g); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The court may not reconsider the facts, reevaluate the evidence, nor substitute its judgment for that of the Commissioner. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). Instead, the court must review the final decision as a whole, and determine whether the decision is "reasonable and supported by substantial evidence." *See id.* Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239). When substantial evidence exists in support of the Commissioner's decision, her decision must be affirmed, even if the evidence preponderates to the contrary. *See id*. While the court acknowledges the limited scope of judicial review, the court notes that the review "does not yield automatic affirmance" of the ALJ's decision. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). Unlike questions as to the factual findings, questions of legal standards are to be reviewed by the court *de novo*. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

In accordance with the Act, the issues before this court consider only whether the record contains substantial evidence to sustain the ALJ's decision, and whether the ALJ applied the

correct legal standards. *See* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982).

V.   Discussion

   A.   **The ALJ Properly Developed the Record and Her Decision is Supported by Substantial Evidence**

In this appeal, Plaintiff's argues that the Commissioner's decision should be reversed or remanded because the ALJ failed to properly develop the record regarding Plaintiff's alleged mental retardation.³ *See* Pl.'s Br. at 6-10. The court disagrees. The ALJ properly decided Plaintiff's claim on the evidence of record.

Plaintiff is correct that an ALJ has an affirmative responsibility to develop a full and fair record. *See* Pl.'s Br. at 8-9 (citing *Sims v. Apfel*, 543 U.S. 103 (2000); *Todd v. Heckler*, 736 F.2d 641, 642 (11th Cir. 1984)); *see e.g., Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). However, the ALJ's responsibility does not relieve Plaintiff of her burden of proving disability.⁴ *See* 42 U.S.C. §§ 423(d)(1)(A), (d)(5); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)(noting that the ultimate burden of proving disability is borne by a plaintiff). Plaintiff must provide the relevant medical and other evidence that she believes will prove disability as a result of her

---

³ Despite Plaintiff's lengthy recitation of facts related to her physical impairments, depression, and anxiety, her sole argument relates to her alleged mental retardation. *See* Pl.'s Br. at 2-5 and 6-10. Accordingly, Plaintiff has waived all arguments relating to her alleged physical impairments, depression, and anxiety. *See Outlaw v. Barnhart,* 197 Fed. App'x 825, 827 n.3 (11th Cir. Aug. 10, 2006)(per curiam); *N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d, 1418, 1422 (11th Cir. 1988)("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived."). In any event, the record and her argument do not suggest the ALJ committed any error in finding Plaintiff had not shown she was disabled in those areas. Before reversing the Commissioner's decision for failure to develop a full and fair record, Plaintiff must proffer evidence that the ALJ should have included in the record, and then show its absence resulted in prejudice. *See Robinson v. Astrue*, 365 F. App'x 993, 995, 999 (11th Cir. 2010); *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997); *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984)(adopted by the 11th Circuit in *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981).

⁴ Notably, Plaintiff was represented by an attorney at her hearing. Therefore, the ALJ in the present case did not have a heightened duty to develop the record. *See Leiter v. Comm'r of Soc. Sec.*, No. 09-15293, 2010 WL 1794177, *5 (11th Cir. May 6, 2010).

mental impairments.[5] *See* 20 C.F.R. §§ 404.1512(a)-(c), 416.912(a)-(c); 404.1513(e), 416.913(e); 404.1516, 416.916. Plaintiff failed to carry her burden of proving she is disabled. Because Plaintiff failed to provide sufficient evidence of her disability, the ALJ properly made a decision based on the evidence of record. *See Ellison*, 355 F.3d at 1276.

Plaintiff argues that the ALJ erred when he did not order a consultative exam testing Plaintiff's IQ. *See* Pl.'s Br. at 9-10. This argument misses the mark. The regulations provide for the agency's discretion when ordering a consultative exam. *See* 20 C.F.R. §§ 404.1519a(b); 416.919a(b)(providing that "[the agency] may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on [a plaintiff's] claim."). The Eleventh Circuit has long recognized that the ALJ's duty to fully and fairly develop the record does not require that a consultative exam be ordered when the record contains sufficient evidence to allow for an informed decision. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007); *Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982)(finding that the ALJ is not required to develop evidence to prove plaintiff's claim or, otherwise, act as counsel). *See also Holladay v. Bowen*, 848 F.2d 1206 (11th Cir. 1988)(quoting *Ford v. Sec. of Health & Human Servs.*, 659 F.2d 66, 69 (5th Cir. 1981)("an administrative law judge is not required to order a consultative exam unless the record establishes that such an examination is necessary to enable the administrative law judge to render a decision."). For the reasons explained below, the court finds that the ALJ's decision denying disability was informed and based on substantial evidence.

---

[5] The agency is obligated to develop Plaintiff's complete medical record for the twelve months before the date of Plaintiff's application. *See Ellison*, 355 F.3d at 1276. Here, Plaintiff filed her applications on September 16, 2011, in which Plaintiff claimed disability beginning December 31, 2007. (Tr. 23, 110, 117, 152). In response, the agency developed Plaintiff's medial record back to 2007, far beyond the required twelve-months. (*See* Court Transcript Index at 2; Tr. 205-222).

Here, the ALJ had sufficient evidence to make a fully informed disability determination without ordering a consultative examination to test Plaintiff's mental capacity. School records confirm that Plaintiff was enrolled in special education classes during her ninth and tenth grade years. (Tr. 181-86). Records also show that by the eleventh grade Plaintiff was no longer assigned to special education classes, and maintained at least a "C" average in most of her classes. (Tr. 181). After completing her eleventh grade year in 1990, Plaintiff left high school and joined the workforce. (Tr. 156, 181). Plaintiff reported that from 1995 to 2007 she held a variety of jobs including caregiver, deli worker, day laborer, warehouse laborer, assembly line worker, sales associate, and sitter. (Tr. 156, 163-77).

Plaintiff failed to meet her burden at the hearing. Notably, Plaintiff does not argue that her alleged mental retardation has worsened since performing these jobs. In fact, there is nothing in the record that indicates Plaintiff's intellectual functioning posed a problem while previously employed, nor does Plaintiff ever raise this in argument.[6] Plaintiff offered no evidence that suggests her level of intellectual functioning interferes with her past employment. At the hearing, Plaintiff's counsel stated he had reviewed Plaintiff's file and had no objections to the exhibits already within the record. (Tr. 40). Plaintiff then knowingly waived a reading of the issues to be decided by the ALJ, failed to indicate that the ordering of a consultative examination was at issue, and never asked the ALJ to order a consultative examination. (Tr. 41). Plaintiff also made no attempt to obtain Plaintiff's outstanding medical records from the Jefferson Clinic, even though the ALJ agreed to keep the record open for an additional fourteen days (Tr. 40-41). *See McCloud v. Barnhart*, 166 Fed. App'x, 410, 418 (11th Cir. 2006)(rejecting the argument that the

---

[6] Plaintiff does not argue that her intellectual deficiency affected her prior employment, nor does she allege a worsening of her alleged intellectual deficiency.

ALJ erred for failing to develop the record, when Plaintiff had the burden of production and made no attempt to obtain the records at issue).

Furthermore, Plaintiff not only failed to respond to agency requests, she was also unresponsive to the requests of examining physicians and psychologists. In December 2011, Plaintiff did not return forms that requested information about her treatment history to Dr. Estock, a state agency psychiatrist. (Tr. 286-98, 300). As a result of Plaintiff's inaction, Dr. Estock stated that he was unable to give an opinion as to Plaintiff's mental impairments because the medical records he had did not substantiate her claims. (Tr. 286-98, 300). In November 2012, during a consultative examination, Plaintiff's examining physician, Dr. Romeo, noted that Plaintiff was unresponsive to all of his questions and commands. (Tr. 303, 305). Plaintiff was provided ample opportunity to procure and submit additional evidence regarding her alleged impaired intellectual functioning, but she did not do so.

Simply put, Plaintiff did not satisfy her prima facie burden of providing evidence showing an inability to return to her prior relevant work. *See Barns v. Sullivan*, 932 F.2d 1356, 1359 (11th Cir. 1991)(finding plaintiff presented no evidence rebutting the Commissioner's reasonable determination that she could perform her prior relevant work). As a result of this failure, the burden never shifted to the ALJ to show that Plaintiff was able to perform other work that existed in the national economy.[7] *See Cannon v. Bowen*, 858 F.2d 1541, 1154 (11th Cir. 1988).

For all these reasons, the court finds that the ALJ had sufficient evidence to make a fully informed disability determination without sending Plaintiff for a consultative examination.

---

[7] To the extent Plaintiff argues that the ALJ needed a medical source statement from a treating or examining physician, her claim is without merit. *See* Pl.'s Br. at 9-10. Because the ALJ's RFC determination is not a medical assessment, the ALJ was not obligated to obtain a MSS in order to determine Plaintiff's RFC and properly determine she is not disabled. *See Shaw v. Astrue*, No.09-16020, 2010 WL 3191673, *3 (11th Cir. Aug. 12, 2010).

Furthermore, the court concludes that any alleged deficiencies in the record are attributable to Plaintiff's failure to satisfy her burden of producing evidence in support of her claim. The ALJ's decision was based on a fully and fairly developed record and is supported by substantial evidence.

### B.     Plaintiff Does Not Meet Listing 12.05

Plaintiff next argues that because the ALJ failed to develop the record, she was unable to properly evaluate whether Plaintiff met Listing 12.05C. *See* Pl.'s Br. at 10 (referencing 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii)). Again, the court disagrees.

An ALJ is not required to mechanically recite all the reasons a claimant is unable to satisfy the requirements of Listing 12.05, particularly when the reasons that such a determination is based upon is the evidence of record. *See Todd v. Heckler*, 736 F.2d 641, 642 (11th Cir. 1984); *Hutchinson v. Bowen* 787 F.2d 1461, 1463 (11th Cir. 1986). To satisfy Listing 12.05C, Plaintiff must meet the diagnostic description of mental retardation with a showing that she has significantly subaverage general intellectual functioning *and* manifested deficits in adaptive behavior before age 22. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.05C, *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). Both requirements must be met.

Even were the court to assume that Plaintiff produced medically documented IQ scores between 60 and 70, the evidence of record does not indicate manifested deficits in adaptive functioning during Plaintiff's developmental period. *See DSM-IV-TR* at 42 ("Mental Retardation would not be diagnosed in an individual with an IQ lower than 70 if there are no significant deficits or impairments in adaptive functioning"). From May 1996 until October 1999, Plaintiff worked for a group home as a caregiver. (Tr. 163). Indeed, Plaintiff began working as a caregiver when she was twenty-three years old. (Tr. 151, 156). At Plaintiff's hearing, the Vocational

Expert testified that the Dictionary of Occupational Titles classifies Plaintiff's caregiver position as medium, semi-skilled work. (Tr. 55). *See also* DICOT 355.674-014, WL 672944 (G.P.O.)(providing that a caregiver's responsibilities include taking and recording temperature, blood pressure, pulse and respiration rates, and food and fluid intake and output, as directed; and cleaning, sterilizing, storing, preparing, and issuing dressing packs, treatment trays, and other supplies). Further, Plaintiff's employment as a caregiver lasted three and a half years. (Tr. 163). This indicates Plaintiff's work was, at least, satisfactory. Plaintiff's ability to perform the requirements of a semi-skilled position after turning twenty-two contradicts any suggestion that she can meet the required diagnostic description of mental retardation. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.05D(5)(c)(providing that discrepancies between formal IQ test results and the individual's daily activities and customary behavior should be considered); *Outlaw v. Barnhart*, No. 05-15996, 2006 WL 2640223, *2 (11th Cir. Aug. 10, 2006)(concluding that evidence of plaintiff's past work history is a factor to discount allegation of mental retardation).

Finally, even if the court were to find that the ALJ erred because she did not expressly consider Listing 12.05, any such error would be harmless. The record evidence makes plain that Plaintiff cannot meet the requirements of the Listing. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)(finding ALJ error was harmless when correction of the error would not change the ALJ's decision). For the reasons given above, the court finds that the evidence of record implied Plaintiff's inability to meet Listing 12.05. Accordingly, the ALJ's decision to deny disability is due to be affirmed.[8]

---

[8] Plaintiff also claims that the ALJ did not properly assess whether mental retardation is a "severe" impairment at step two of the sequential evaluation. *See* Pl.'s Br. at 7-8. But Plaintiff bears the initial burden of demonstrating her impairments are "severe." *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). For the reasons given above, Plaintiff failed to carry this burden. Even if the court were to find that the ALJ erred in this assessment, this error is harmless. *See Davis v. Shalala*, 985 F.2d 528, 532 (11th Cir. 1993)(finding there was no reversible error when the ALJ found Plaintiff had at least one "severe" impairment at step two, and proceeded with the sequential evaluation).

## VI.     Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence, and that the ALJ applied the proper legal standards in reaching this determination. The Commissioner's final decision is, therefore, due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this March 24, 2016.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE